UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ANTYWAN SEAWOOD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CV-00042-SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

On March 31, 2022, Petitioner Antywan Seawood ("Seawood") filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. This Court then ordered the United States to show cause why the relief requested in Seawood's motion should not be granted. Based on the reasons set forth below, this Court will dismiss Seawood's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

**I.    INTRODUCTION**

Petitioner Antywan Seawood is presently serving a 240-month sentence following his guilty plea to charges related to an armed carjacking and the theft of multiple firearms from a federally licensed firearms dealer. Seawood raised various challenges to his sentence on direct appeal, which were rejected by a panel of the Eighth Circuit. *United States v. Seawood*, 802 Fed.Appx. 226 (8th Cir. 2020) (per curiam) (unpublished). Seawood then petitioned the Supreme Court for a writ of

certiorari, which was denied. *Seawood v. United States*, 141 S.Ct. 1724 (Mar. 22, 2021). Seawood now seeks to attack his sentence in this post-conviction relief motion. For the reasons set forth herein, Seawood is not entitled to relief.

## II.    PROCEDURAL HISTORY

### A. <u>Indictment</u>

In January 2018, a federal grand jury returned a seven-count Second Superseding Indictment charging Seawood and several accomplices with charges related to three armed carjackings and the theft of over 60 firearms during a pawnshop burglary. Doc. 184. The seven counts are summarized as follows:

> Count I:  possession of stolen firearms on February 27, 2017, in connection with the burglary of a business known as "Instapawn," in violation of 18 U.S.C. § 922(j);
>
> Count II:  carjacking of victim "A.M.K." on February 26, 2017, in violation of 18 U.S.C. § 2119;
>
> Count III:  brandishing a firearm in furtherance of the carjacking alleged in Count II, in violation of 18 U.S.C. § 924(c)(1) and (2);
>
> Count IV:  carjacking of victim "K.T." on April 23, 2017, in violation of 18 U.S.C. § 2119;
>
> Count V:  brandishing a firearm in furtherance of the carjacking alleged in Count IV, in violation of 18 U.S.C. § 924(c)(1) and (2);
>
> Count VI:  attempted carjacking of victim "M.D." on April 27, 2017, in violation of 18 U.S.C. § 2119; and
>
> Count VII:  brandishing a firearm in furtherance of the carjacking alleged in Count VI, in violation of 18 U.S.C. § 924(c)(1) and (2).

 Co-defendant Arlandus Howard, one of Seawood's accomplices, proceeded to trial in February 2018.  The jury convicted Howard of Counts I, II, and III, but was unable to

reach a unanimous verdict on the remaining counts. This Court accepted the verdicts on Counts I-III and declared a mistrial on Counts IV-VII. The government later agreed to dismiss Counts IV-VII and proceed with Howard's sentencing.

### B. Plea Agreement

After co-defendant Howard's jury trial, Seawood reached a plea agreement with the government in which he agreed to plead guilty to Counts I-III (the same counts forming the basis of Howard's convictions). Doc. 274 (Plea Agreement). In the written agreement, Seawood admitted that he broke into "a firearms dealer known as Instapawn" with co-defendant Howard, co-defendant Norlando Jackson, and two other accomplices. *Id*. at 5. Seawood further admitted that the group stole more than 60 firearms during the burglary. *Id*. Regarding the carjacking of A.M.K., Seawood admitted that he was with Howard and Jackson when they "came upon [A.M.K.] as she was parked" and "decided to take her car." *Id*. at 6. Seawood further admitted that he and Jackson "were both armed with handguns" when they "approached [her] car and demanded that she get out." *Id*. When A.M.K. did not immediately comply, "Jackson took out a pistol and pointed it at [her]." *Id*. Moments later, A.M.K. "was thrown out of the car by Jackson." *Id*. Jackson then "got in the driver's seat" and drove away with Seawood and Howard. *Id*.

As part of the plea agreement, the government agreed to dismiss Counts IV-VII at the time of Seawood's sentencing, *i.e.*, all charges related to the armed carjackings of K.T. and M.D. *Id*. at 1. The agreement was essentially an "open" plea. The parties reached no agreements with respect to any offense levels (with the exception of a three-level deduction for acceptance of responsibility) or criminal history calculations. Instead, those

3

determinations were expressly left to the Court at sentencing. *Id*. at 7-8. Additionally, each party remained free to request a sentence above or below the applicable guideline range ultimately determined by the Court. *Id*. at 2.

Seawood appeared before this Court on April 30, 2018, for his change of plea hearing. Doc. 352 (Plea Tr.). At the outset of the hearing, the Court confirmed that Seawood had thoroughly reviewed the written plea agreement with his attorney before signing it. Plea Tr. at 6. The Court further inquired as to whether "any promises [had] been made by anyone to get [him] to plead guilty other than the promises set out in th[e] agreement." *Id*. Acknowledging that no additional promises had been made, Seawood confirmed that the written plea agreement was "the complete, full, and total agreement." *Id*. at 6-7. Consistent with the plain terms of the agreement, the Court proceeded to explain that the sentencing guidelines were not binding on the Court:

> THE COURT: So you'll understand … after your plea, I'll get with the probation office to calculate the sentencing guidelines, and we'll use two factors. The first is your criminal history. That's your criminal record, if any. And the other is what we call the total offense level for these offenses. Those are the two factors that go into the calculation. Do you understand that?
>
> SEAWOOD: Yes sir, Your Honor.
>
> THE COURT: And, again, your lawyer has explained this to you, is that right?
>
> SEAWOOD: Yes, sir, Your Honor.
>
> THE COURT: Then if you disagree with the calculation, you'll be allowed to challenge that, okay?
>
> SEAWOOD: Yes, sir, Your Honor.
>
> THE COURT: I do need to advise you, though, that the sentencing guidelines, whatever they turn out to be, are simply guidelines. And by that I

4

mean I can impose a sentence against you that's above the guidelines or a sentence that's below the guidelines.  Do you understand that, too?

SEAWOOD:  Yes, sir, Your Honor.

Plea Tr. at 8-9.  The Court then specifically reviewed the statutory ranges of punishment for each of Counts I-III.  *Id*. at 9-10.  In doing so, the Court went to great lengths to explain that Seawood could be exposed to any penalties within these ranges.  After going through each count individually, the Court provided a summary of the potential penalties:

THE COURT:  So let me recap this.  For Count I the penalty is up to 10 years in prison.  Count II is up to 15 years in prison.  And Count III it's 7 years to life, and that sentence imposed in Count III must be run consecutively to the sentences imposed in Counts I and II.  Do you understand that completely then?

SEAWOOD:  Yes, Your Honor.

THE COURT:  I'm going to consider the full range of punishment on each of these three counts, and the sentence to be imposed will be in my discretion within those ranges of punishment.  Do you understand that too?

SEAWOOD:  Yes, Your Honor.

THE COURT:  So with that in mind has anyone told you or promised you what sentence you'll receive in the case?

SEAWOOD:  Can you repeat that?

THE COURT:  Has anyone told you or promised you what sentence you'll receive in the case?

SEAWOOD:  No, Your Honor.

Plea Tr. at 10-11.  After verifying that Seawood fully understood the potential penalties for the offenses, the Court asked the prosecutor to summarize the evidence it would prove if the case were to go to trial.  The prosecutor reviewed the facts outlined in the written agreement, including the fact that Seawood and his accomplices intended to use firearms

5

to take A.M.K.'s vehicle by force. *Id*. at 13. Seawood admitted on the record that all of the facts laid out in the agreement were "true and correct." *Id*. The Court accepted Seawood's guilty plea and ordered the Probation Office to complete a presentence investigation report (PSR) before the sentencing hearing.

## C. **Presentence Investigation Report**

The PSR contained a detailed summary of Seawood's offense conduct, including the underlying conduct of all three of the carjackings. Doc. 312 (PSR). On the night of the first carjacking (the one to which he pled guilty), Seawood, Howard, Jackson, and another accomplice took the MetroLink from East St. Louis, Illinois, to Clayton, Missouri, where the group planned to roam around various neighborhoods to steal items out of parked cars. PSR ¶ 12. Seawood and his accomplices were aware that, given the late hour, they would be unable to ride the MetroLink back to East St. Louis. *Id*. Once they were done breaking into cars, their plan all along was to steal a car and drive it back to East St. Louis. *Id*. Both "Seawood and Jackson were armed with handguns," and they "intended to use those handguns if needed to steal a car for the return trip." *Id*.

When the group finished rummaging through the neighborhood, they spotted A.M.K. sitting alone in a parked Mazda 3 vehicle. Seawood and Jackson "decided to take her car by force by use of their firearms." PSR ¶ 13. They approached A.M.K. as she was sitting in the driver's seat listening to the car stereo. Seawood went to the front passenger side window, while Jackson went to the driver's window. *Id*. Seawood and Jackson then "displayed their handguns and began shouting at the victim to open her car doors." *Id*. "Seawood and Jackson began tapping on the car windows with their handguns and counting

backwards," implying that "something was going to happen to A.M.K. if she did not open the door." *Id*. A.M.K. "opened her driver's door and Jackson grabbed her arm, yanked her out of the vehicle, and threw her to the ground." *Id*. The group then entered A.M.K.'s Mazda and drove back to East St. Louis. *Id*.

The following day, Seawood and his accomplices drove A.M.K.'s Mazda to Poplar Bluff, Missouri, where they met up with co-defendant Demarlon Richardson. PSR ¶ 14. Richardson suggested that the group burglarize a local business known as "Instapawn," which, among other things, is a federally licensed firearms dealer. *Id*. Seawood and his accomplices drove the stolen Mazda to Instapawn late at night after it closed and broke into the business by shattering a window. *Id*. The group proceeded to steal a total of 63 firearms, which they divided up among themselves. PSR ¶ 16.

The PSR also provided details of the other two carjackings that were to be dismissed at sentencing as part of the plea agreement. With respect to the offense conduct related to Counts IV and V, the PSR stated that, on the night of April 23, 2017, victim K.T. was walking down the street when she was approached by Seawood, Jackson and Howard. PSR ¶ 18. Jackson pointed a pistol at her and demanded that she turn over her car keys. *Id*. K.T. tried to run away, but she was pushed to the ground by Jackson. K.T. got up and frantically ran towards the front door of a nearby building, but Jackson intercepted her and threw her to the ground again. *Id*. Seawood and Howard then approached while K.T. was on the ground. *Id*. At that point, "Jackson struck the victim on the right side of her forehead several times" and then "pulled the victim's keys and purse from her hand while yelling at her to stop struggling." *Id*. After forcibly taking K.T.'s keys, Jackson ran to her vehicle.

Seawood and Howard followed behind and they drove away in K.T.'s vehicle. *Id*. K.T. was taken to a hospital, where she was treated for injuries to her face and head. *Id*.

Regarding the offense conduct related to Counts VI and VII, the PSR reflected that Seawood, Howard, and two other accomplices drove to Clayton in K.T.'s stolen vehicle on the night of April 27, 2017. PSR ¶ 19. Their purpose once again was to steal items out of parked vehicles. *Id*. At some point, Howard became separated from the group. Around this time, victim M.D. was driving back to his residence when he noticed Howard attempting to flag him down. *Id*. M.D. ignored him and continued driving. *Id*. Howard then fired multiple gunshots at M.D.'s vehicle as he drove past, causing the rear passenger window to shatter. *Id*. M.D. accelerated away from the area and immediately called the police. *Id*.

In addition to the offense conduct summary, the PSR included sentencing guidelines calculations. PSR ¶¶ 26-54. The PSR ultimately determined that Seawood's advisory guideline imprisonment range was 46-57 months on Counts I and II, plus a minimum 84-month consecutive term on Count III. PSR ¶ 77. The effective guideline range, then, was 130-141 months. The PSR also reviewed the statutory ranges of punishment on each of the three counts: the maximum term of imprisonment on Count I was 10 years; Count II carried a maximum penalty of up to 15 years; and Count III had a mandatory minimum 7-year consecutive term and a maximum term of lifetime imprisonment. PSR ¶ 75. With respect to culpability for all the offense conduct—including relevant conduct—the PSR noted that Seawood, Jackson, and Howard were "first and equally culpable as they possessed firearms during the carjacking offenses and participated in the

8

burglary." PSR ¶ 20. The PSR further noted that Jackson—who had also pled guilty to the same three counts—had been sentenced to serve a total aggregate term of 300 months' imprisonment. PSR ¶ 9. Howard, the other equally culpable co-defendant, had yet to be sentenced. PSR ¶ 8.

Prior to Seawood's sentencing hearing, the government filed a motion for an upward variance. Doc. 311. Emphasizing the violent nature of the carjacking offenses, the government recommended a total aggregate sentence of 300 months imprisonment—the same sentence Jackson received. *Id*.

**D. <u>Sentencing Hearing</u>**

Seawood appeared with his attorney for sentencing on September 18, 2018. Doc. 351 (Sent. Tr.). At the outset of the hearing, the Court confirmed that Seawood had a chance to review the presentence investigation report in detail with his attorney. Sent. Tr. at 3. Seawood's attorney announced that there were no objections to the contents of the report. *Id*. at 3-4. Accordingly, the Court adopted all the factual statements set forth therein. *Id*. The Court proceeded to review the sentencing guidelines calculations. Neither party raised any objections to the calculations. *Id*. at 4.

After confirming there were no objections to the PSR, the Court addressed the government's motion for an upward variance. Sent. Tr. at 5-20. The government offered several exhibits in support of the motion, including a copy of Howard's jury trial transcript. Gov't. Sent. Exh. 1. The government also introduced a series of photographs from Seawood's Facebook page that featured him displaying a handgun. Gov't. Sent. Exh. 3. One of the photographs depicted Seawood pointing a handgun directly at the camera with

a caption stating "I Love Being A Shooter[.]" *Id.* Finally, the government submitted a copy of a police report summarizing a custodial interview of Seawood following his arrest. Gov't. Sent. Exh. 4. During the interview, Seawood admitted being involved in the carjacking of A.M.K. on February 26, 2017. *Id.* When questioned about the attempted carjacking of M.D. on April 27, 2017, the reports reflected that Seawood admitted he was in the Clayton area that night stealing items from cars but denied taking part in the attempted carjacking. *Id.* In support of its recommended 300-month sentence, the government stressed that Seawood was involved in "a series of extremely violent acts" and that the "sentence should reflect the seriousness and gravity of those acts." Sent. Tr. at 7.

Seawood's attorney then addressed the Court at length, highlighting a variety of mitigating factors that, in his view, weighed against imposing a 300-month sentence. Sent. Tr. at 8-18. Seawood's attorney specifically called attention to the fact that Seawood was only twenty years of age. Sent. Tr. at 11, 17. A 300-month sentence, Seawood's attorney urged, was unmerited in that it would represent a period of time "longer than he has been on this earth." Sent. Tr. at 11. Seawood's attorney also emphasized his lack of criminal history, noting Seawood had "a criminal history category of I because he has zero points," nor did he have any type of juvenile record. Sent. Tr. at 16-17. Seawood's attorney further noted that Seawood had been previously exposed to violence when he witnessed his cousin get shot and killed. Sent. Tr. at 17.

Throughout the sentencing hearing, Seawood's attorney continuously highlighted that two of the carjacking offenses were being dismissed as part of the plea agreement. Sent. Tr. at 8-16. The Court was quick to point out that, although certain counts were being

10

dismissed, the underlying offense conduct "could be taken into consideration at sentencing." Sent. Tr. at 9. While Seawood's attorney seemed to acknowledge that the Court could properly consider the underlying conduct of the dismissed counts, he nonetheless repeatedly referenced the fact that the jury in Howard's case was unable to reach a unanimous verdict on the counts related to the latter two carjackings. At one point, for example, the following exchange occurred:

> SEAWOOD'S ATTORNEY: When we're going through this and when we're looking at what was established at that trial that you presided over, in those counts it wasn't an acquittal but it wasn't a conviction, either. Those jurors had problems convicting Mr. Howard who was in the same situation in that same boat. They had a problem reaching a verdict on those things. That should give us all pause.
>
> THE COURT: Of course, it's a different burden of proof, though.
>
> SEAWOOD'S ATTORNEY: I understand that, Your Honor. But it should still give us pause.

Sent. Tr. at 11. Later in the colloquy, Seawood's attorney continued:

> And I understand that there's a different burden of proof, but there was still a problem with that evidence. *** I don't think it was proven beyond a reasonable doubt. And I understand that that's not the standard that you need to consider, Judge, but I just want you to think about it. It wasn't established that Mr. Howard was even involved in that beyond a reasonable doubt.

Sent. Tr. at 13. Although Seawood's attorney voiced concerns about the soon-to-be-dismissed counts, the sentencing record demonstrated that everyone agreed the Court was acting well within its authority in considering all of the facts and evidence before it—including the information contained in the PSR to which Seawood did not object—in determining an appropriate sentence.

Moving on, Seawood's attorney also compared Seawood's role in the offenses with

that of co-defendant Jackson.  At the time of Seawood's sentencing, the district court had already imposed a 300-month sentence on Jackson.  Drawing a distinction between their relative culpability, Seawood's attorney noted that there was no dispute that Jackson was responsible for causing the injuries to K.T. by striking her upon the head with a gun during the carjacking on April 23, 2017.  Sent. at 13-14.  Seawood's attorney further stressed that Jackson was responsible for physically throwing A.M.K. out of her car during the February 26, 2017, carjacking.  Seawood's attorney maintained that these factors supported a lower sentence for Seawood.

When the Court proceeded to pronounce the sentence, it announced at the outset that it was not inclined to impose the 300-month sentence recommended by the government after "taking into consideration the defendant's background [and] his lack of an earlier criminal record."  Sent. Tr. at 18.  On the other hand, the Court expressed a great deal of concern regarding the violent nature of the offenses.  The Court emphasized that it had been "very careful to listen to all [the] evidence" presented during Howard's jury trial.  Sent. Tr. at 18-19.  The Court explicitly stated that, based upon the evidence, it was "firmly convinced" Seawood was "completely and totally involved in at least two of the carjackings[.]"  Sent. Tr. at 19.  In addition to the two counts related to the carjacking of A.M.K. to which Seawood pled guilty, the Court concluded the "evidence is overwhelming that he was also involved in *** at least one other carjacking in which he also brandished a firearm."  Sent. Tr. at 19.

Although the Court was firmly convinced of Seawood's involvement in at least one additional carjacking, the Court carefully examined the relative culpability between

Jackson and Seawood.  The Court specifically observed that "Jackson is the one who actually pulled one of the victims out of the car and actually physically assaulted one of the victims."  Sent. Tr. at 19.  After considering all of the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), the Court imposed a total aggregate sentence of 240 months imprisonment.  Sent. Tr. at 20.  The sentence consisted of consecutive 57-month terms on each of Counts I and II, and a consecutive 126-month term on Count III. Doc. 326.  This sentence, as the Court noted, was five years less than the sentence it had previously imposed on Jackson.  *Id.*  The Court expressly stated that it had "very carefully weighed all the factors that I'm required to weigh when I impose a sentence, and that's why I gave you less than [Jackson]."  Sent. Tr. at 26.  Seawood's attorney did not object after the 240-month sentence was imposed.  Sent. Tr. at 26.

### E.  <u>Direct Appeal</u>

On direct appeal, Seawood asserted that his sentence was substantively unreasonable.  *See* Brief of Appellant, Appeal No. 18-3107.  Among other things, Seawood maintained the Court abused its discretion by imposing consecutive sentences on Counts I and II. *Id*.  Seawood further complained that his sentence was based, in part, on offense conduct related to the dismissed counts.  *Id*.

The Eighth Circuit rejected these contentions in an unpublished opinion.  *United States v. Seawood*, 802 Fed.Appx. 226   (8th Cir. 2020) (unpublished) (per curiam).  Although Seawood argued that this Court ignored relevant sentencing factors, such as his relative youth and lack of criminal history, the Eighth Circuit determined otherwise.  In fact, the panel expressly found the "record shows that the district court considered both of

13

these factors in crafting [Seawood's] sentence." *Id*. at 227. The panel further recognized that this Court "weighed those factors, among others, against the seriousness of the crimes committed and the need to avoid unwarranted sentencing disparities." *Id*. Noting that this Court "accurately calculated [the] applicable guideline range at sentencing," the panel concluded that this Court "made clear that it had a well-considered plan for crafting proportionate sentences for Seawood, Howard, and their co-defendants, taking into consideration their roles in the violent crime spree." *Id*.

Additionally, addressing Seawood's concerns about the dismissed carjackings, the panel observed that a "sentencing court is not prohibited from considering acquitted conduct 'so long as that conduct has been proved by a preponderance of the evidence.'" *Id*. at 227 (quoting *United States v. Ruelas-Carbajal*, 933 F.3d 928, 930 (8th Cir. 2019)). Indeed, the panel reaffirmed that a district court "must consider all relevant conduct 'whether uncharged, charged, or charged and dismissed.'" *Seawood*, 802 Fed. Appx. at 228 (quoting *United States v. Griggs*, 71 F.3d 276, 281 (8th Cir. 1995)). The panel concluded that this Court "applied the proper standard of proof at sentencing and its factual findings were adequately supported by the record." *Seawood*, 802 Fed.Appx. at 228.

Seawood filed a petition for a writ of certiorari in the Supreme Court, which was denied on March 22, 2021. *Seawood v. United States*, 141 S.Ct. 1724 (2021).

Seawood has now filed a motion under 28 U.S.C. § 2255, asserting his attorney rendered ineffective assistance of counsel. Docket No. 1:21CV-00042 SNLJ, Doc. 1. In his motion, Seawood raises various complaints concerning his 240-month sentence. Some of these claims have already been rejected by the Eighth Circuit on direct appeal, while

14

others are completely refuted by the record. Accordingly, this Court must deny the motion without an evidentiary hearing.

## III.   GENERAL STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

A Section 2255 movant is entitled to relief when his sentence "was imposed in violation of the Constitution or laws of the United States." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011). The movant must show that the claimed error amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333 (1974). Importantly, the Eighth Circuit has recognized that "[a] defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

In the landmark case of *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test a defendant must satisfy in order to be entitled to relief. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Id.*

Regarding the first prong of the *Strickland* test, the proper standard for attorney performance is that of reasonably effective assistance. As the Supreme Court explained, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of

reasonableness." *Id*. at 687-88.  Recognizing the complexity and variety of issues that defense counsel must confront and address in any given case, the Supreme Court refused to adopt a standard that would implement an exhaustive set of detailed guidelines to evaluate attorney performance.  Instead, the proper measure of attorney performance is simply reasonableness under prevailing professional norms.  *Id.*  The Supreme Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id*. at 689 (citations and internal quotation marks omitted).  The Supreme Court further instructed that a reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

The second prong of the *Strickland* test requires a Movant to prove that he was prejudiced by counsel's deficient performance.  An error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id*. at 691. The Supreme Court observed "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Thus, it is simply not enough for the defendant to show that errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. And where, as here, the defendant pleaded guilty, the defendant must establish that he would have insisted on going to trial. Indeed, it is well-settled that "[i]n order to satisfy the prejudice prong of the *Strickland* test in the guilty plea context, a defendant must establish a reasonable probability that he would have exercised his right to a trial but for counsel's ineffectiveness." *Watson v. United States*, 682 F.3d 740, 745 (8th Cir. 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Moreover, where a movant has pled guilty, collateral review is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). To be valid, a guilty plea must be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). The plea must also be made with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The voluntariness of a plea can only be determined by "considering all of the relevant circumstances surrounding it." *Id*. at 749. When a movant claims his guilty plea was not knowing and voluntary due to ineffective assistance, he "must overcome strong presumptions of counsel's competence and of the

voluntariness of the guilty plea based on his representations at the plea hearing." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993).

Ultimately, when evaluating an ineffectiveness claim, a reviewing court is not required to address both prongs of the *Strickland* test if the defendant makes an insufficient showing on one. As the Supreme Court instructed, a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed." *Id*. at 697. Accordingly, if a reviewing court determines the alleged errors would have had no impact on the result of the proceeding, the claim of ineffectiveness must fail.

### A. <u>Need for Evidentiary Hearing and Burden of Proof</u>

A motion filed under <u>28 U.S.C. § 2255</u> should be denied without an evidentiary hearing when the court records conclusively show that the movant is not entitled to relief. The statute provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

*Id*. Additionally, Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge

18

shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. *United States v. Oldham,* 787 F.2d 454, 457 (8th Cir. 1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, would entitle the movant to relief. *Payne v. United States,* 78 F.3d 343, 347 (8th Cir. 1996). Moreover, in conducting this inquiry, courts may not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *Simmons v. United States*, No. 1:16-CV-101 SNLJ, 2016 WL 5941929 (E.D. Mo. Oct. 13, 2016) (citation omitted); *see also Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (reaffirming long-standing rule of dismissing allegations that are "contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.* at 225-26; *see also United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995); *Engehlen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

**B. <u>Seawood's Motion Will be Denied Without an Evidentiary Hearing</u>**

In his motion to vacate, Seawood raises various challenges to his 240-month sentence. Doc. 1. His primary complaint seems to be that this Court improperly based the sentence on "inaccurate or unreliable information" by giving "heavy weight to unproven carjackings." *Id.* at 5. This evidence, according to Seawood, did not "meet

sufficient indicia of reliability or [the] preponderance of evidence standard of proof." *Id*. But this claim was considered and rejected by the Eighth Circuit on direct appeal. Reaffirming that a district court "must consider all relevant conduct whether uncharged, charged, or charged and dismissed," the Eighth Circuit expressly concluded that this Court "applied the proper standard of proof at sentencing and its factual findings were adequately supported by the record." *Seawood*, 802 Fed. Appx. at 228. It is well-settled that "claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Thompson v. United States*, 872 F.3d 560, 565 (8th Cir. 2017) (quoting *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003)). Accordingly, Seawood's claim fails.

Seawood's remaining claims are all related to the length of his sentence. To recap, the advisory guideline imprisonment range on Counts I and II was 46-57 months, while the guideline term of imprisonment on Count III was a mandatory minimum 84-month consecutive sentence. PSR ¶ 77. This resulted in an effective guideline range of 130-141 months. Prior to sentencing, the government filed a motion for an upward variance where it recommended a total aggregate sentence of 300 months' imprisonment. Doc. 311. The government specifically suggested that Seawood should receive a sentence of 100 months on each of the three counts, all to be run consecutively. *Id*.; Sent. Tr. at 7-8. The Court ultimately imposed a 240-month aggregate sentence, consisting of consecutive 57-month terms on Counts I and II, and a consecutive 126-month term on Count III. Doc. 326.

Seawood lodges several attacks on the nature of his sentence, all of which are refuted by the record. Regarding the sentence on Count III, for example, Seawood asserts

this Court failed to "give notice … of its intent to depart upward." Doc. 1 at 4. Seawood maintains he "should have only received 84 months, not 126 months." *Id*. Seawood then proceeds to assert that this Court "promised" to impose a sentence within the advisory guideline range at his change of plea hearing, *i.e.*, a total aggregate sentence somewhere between 130-141 months. *Id*. at 6. Seawood further contends that this Court somehow assured him that it was "barred" from imposing consecutive sentences on Counts I and II. *Id*. According to Seawood, "any reasonable defendant would infer counts 1 and 2 were to be run concurrently" based on the discussion at his change of plea hearing. *Id*. at 8. In the end, Seawood claims that "had counsel investigated plea agreement and explained to [him] all counts were to be run consecutively, [he] would not have accepted the plea agreement." *Id*. at 9.

Again, these contentions are simply refuted by the record. The written plea agreement set out the possible statutory penalties for each of the three counts to which Seawood pled guilty. Doc. 274 at 6-7. At the change of plea hearing, this Court exhaustively reviewed the potential maximum sentences to which Seawood could be exposed. Plea Tr. at 9-11. And this Court explicitly warned Seawood, in open court, that it was "going to consider the full range of punishment on each of these three counts, and the sentence to be imposed will be in [the Court's] discretion within those ranges of punishment." Plea Tr. at 10-11. Seawood acknowledged, under oath, that he completely understood. *Id*. This Court then confirmed that no one had issued any promises as to the sentence he expected to receive in the case. *Id*. Additionally, this Court emphasized that the sentencing guidelines were in no way binding on the Court. *Id*. at 6-9. Indeed, this

Court stressed that "the sentencing guidelines, whatever they turn out to be, are simply guidelines." *Id*. at 8-9. As this Court made clear, it could "impose a sentence against [Seawood] that's above the guidelines or a sentence that's below the guidelines." *Id*. at 9. Seawood again acknowledged that he fully understood. *Id*.

The record simply refutes Seawood's claims. There is nothing in the record that remotely supports Seawood's allegations that this Court "promised" to impose a sentence within the advisory guideline range. Nor was there any discussion that could somehow be construed as an assurance that the Court was "barred" from imposing consecutive sentences on Counts I and II. And there is no legal basis to support Seawood's contention that this Court was required to provide advance notice of an intent to impose a sentence above the advisory guideline range. In short, Seawood's claims are baseless and must be denied without an evidentiary hearing.

## IV.   SEAWOOD'S SUPPLEMENTAL MOTION

On August 8, 2022, Seawood filed an untimely supplemental Sec. 2255 motion raising three additional claims of ineffective assistance of counsel. All three new claims can be condensed to allegations that the plea hearing, 1) neither counsel nor this Court told Seawood the essential elements of the offenses to which he pleaded guilty, 2) nor did Seawood understand the nature of the offenses, and in particular, that carjackings were to take place, 3) nor did this Court make a determination that there was a factual basis for the plea. Though the claims are untimely, they are also conclusively refuted by the record. At the hearing, where Seawood was under oath, the following colloquy took place:

22

| THE COURT: | I'll ask the prosecutor then to summarize the evidence the Government would prove if the case were to go to trial. |
|---|---|
| MR. SORRELL: | Thank you, Your Honor. That evidence would be that on February 28th, 2017, a firearms dealer Instapawn in Butler County, Missouri, was broken into by several individuals. Over 60 firearms were stolen during that burglary. |
| | The investigation eventually revealed that these five persons were involved in that burglary and theft of the firearms. Antywan Seawood was a person who entered that store and took firearms as well as Germonde Brunner, Arlandus Howard, Norlando Jackson and Demarlon Richardson. |
| | Jackson, Brunner, Howard and Seawood took their stolen firearms back to their homes in East St. Louis, Illinois. Richardson took his stolen firearms to his home in Poplar Bluff, Missouri. |
| | The firearms taken were all manufactured in locations other than the State of Missouri and affected interstate commerce before they were stolen. |
| | The 60 plus firearms taken were all firearms as that term is defined by Title 18, United States Code, Section 921(a)(3)(A). |
| | And by this plea Antywan Seawood admits that he participated in the burglary of Instapawn as described above in the theft of firearms from that store. |
| | On February 26th, 2017, Alyssa Koerner, was parked in her 2013 Mazda outside her home in Clayton, Missouri at around 10:15 p.m. Norlando Jackson, Germonde Brunner, Arlandus Howard and Antywan Seawood came upon Ms. Koerner as she was parked. |
| | The four men decided to take her car. Jackson and |

Seawood were both armed with handguns. Seawood, Jackson and the other men approached Koerner's car and demanded that she get out.

When that didn't happen immediately, Norlando Jackson took out a pistol and pointed it at Ms. Koerner. Ms. Koerner was afraid for her life, so she unlocked her door and was thrown out of the car by Jackson.

Jackson got in the driver's seat, and the other three men got in the car and drove away. Seawood admits that he knew the group was going to take the Mazda by force before it was taken and that the group was going to use firearms to take the vehicle.

The Mazda was manufactured in Japan and affected interstate commerce before its discovery in Missouri. Thank you.

THE COURT:          Have you heard the statements from the prosecutor?

THE DEFENDANT:      Yes, Your Honor.

THE COURT:          Is everything he said true and correct?

THE DEFENDANT:      Yes, Your Honor.

THE COURT:          Do you admit that you did all those acts he described then?

THE DEFENDANT:      Yes, Your Honor.

THE COURT:          There's no question about it, is there?

THE DEFENDANT:      No, Your Honor.

THE COURT:          I'm going to go through the elements with you, specifically paragraph 3 on page 2. As to Count 1 do you admit that you, aided and abetted by others, knowingly possessed a firearm or firearms that you knew or had reasonable cause to believe

24

were stolen and that had been transported across the state line at some time beforehand? Do you admit all that?

THE DEFENDANT:          Yes, Your Honor.

THE COURT:          As to Count 2 do you admit that you, aided and abetted by others, took a Mazda 3 motor vehicle from Alyssa M. Koerner, that you and the others did so by force, violence or intimidation and that the motor vehicle involved had been transported, shipped or received in interstate or foreign commerce? Do you admit all that then?

THE DEFENDANT:          Yes, Your Honor.

THE COURT:          And then at or during the time that you and the others took the Mazda 3 they intended to use – to cause death or serious bodily injury? Do you admit all that?

THE DEFENDANT:          Yes, Your Honor.

THE COURT:          As to Count 3 then do you admit that you, aided and abetted by others, committed the crime of carjacking as charged in Count 2 and that you aided and abetted by others knowingly possessed a firearm in furtherance of that crime and that the firearm was brandished during the commission of the crime? Do you admit all that too?

THE DEFENDANT:          Yes, Your Honor.

Seawood also claims that the recent case of *United States v. Taylor*, 141 S. Ct. 2282 (June 21, 2022), absolves him of liability. That case held, in general, that attempt to commit a crime of violence is not itself a crime of violence. However, Seawood was not charged with attempting a crime of violence but was charged instead with the actual commission of a crime of violence. His reliance on *Taylor* is misplaced.

25

## V.    CONCLUSION

For the foregoing reasons, this Court will deny Seawood's § 2255 motion [Doc. 1] without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Seawood has not made a substantial showing of the denial of federal constitutional right.

**SO ORDERED** this 21st day of November, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE